UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWIN CRUZ,

                              Plaintiff,

v.
                                                             9:13-CV-00029
                                                              (MAD/TWD)

A. GORDON, et al.

                              Defendants.
_____

APPEARANCES:                                                  OF COUNSEL:

EDWIN CRUZ, 04-A-0512
Plaintiff pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582


HON. ERIC T. SCHNEIDERMAN                  GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Edwin Cruz claims that Defendants violated his Eighth Amendment rights by acting with excessive force and deliberate indifference to his medical needs. (Dkt. No. 1.) Currently pending before the Court is Defendant Lipka's motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56. (Dkt. No. 54.) For the reasons discussed below, I recommend that the Court grant Defendant's motion and dismiss Plaintiff's claim against her.

I.  FACTUAL AND PROCEDURAL SUMMARY

On January 19, 2011, Plaintiff, then an inmate at Great Meadow Correctional Facility, entered into a "heated verbal exchange" with another inmate that escalated into a physical fight. (Dkt. No. 1 ¶¶ 4, 9.) Defendants C.O. Gordon, C.O. J. Burch, C.O. D. Huse, C.O. D. Hood, and C.O. John Doe #1 responded to the altercation. *Id.* ¶ 10. Plaintiff alleges that Defendants proceeded to "attack[] both combatants, with kicks, punches and batons." *Id.* Defendants handcuffed both inmates at their wrists and ankles and beat them all the way to the facility hospital, where Defendants allegedly then beat Plaintiff for a second time. *Id.* ¶¶ 10-12. Following these events, Defendant Nurse Lipka interviewed Plaintiff and examined his injuries. *Id.* ¶ 13. Defendant Lipka noted "some (but not all)" of Plaintiff's injuries, including a lump and abrasion on Plaintiff's forehead and the swelling of one of his ears. (*Id.* ¶ 13, Dkt. No. 54-2 at 33-34.)[1] Defendant Lipka cleaned Plaintiff's injured areas and referred him to a Physician Assistant "for assessment of [Plaintiff's] injuries based on [Defendant's] evaluation." (Dkt. No. 54-1 ¶ 8.) Plaintiff claims further injuries that were not documented or treated by Defendant Lipka included cuts on Plaintiff's wrists and ankles due to the handcuffs, a swollen and bleeding nose, and bruises on Plaintiff's back and legs "due to batons." (Dkt. No. 1 ¶ 14.) Plaintiff also alleges that Defendant Lipka stated "[it's] your fault, don't come crying to me. You know if you

---

[1] Plaintiff claims that Defendant stated in her notes that his right ear was swollen (Dkt. No. 1 ¶ 13), while Defendant Lipka's evaluation notes that Plaintiff's left ear was swollen (Dkt. No. 54-1 at 33-34). The Court notes that references to page numbers in citations to declarations filed in support of the motion for summary judgment refer to the page numbers assigned by the Court's electronic filing system.

2

make these guys work, [they're] going to get pissed and this is what happens. [It's] your own fault." *Id.* ¶ 16.

On January 19, 2011,[2] Plaintiff's facial structure and spine were x-rayed. (Dkt. No. 1 ¶ 18; Dkt. No. 54-1 at 2, 7-8.) Plaintiff claims that he still suffers hearing loss from the incident. (Dkt. No. 1 ¶ 19.)

Plaintiff never filed a formal grievance against Defendant Lipka. (Dkt. No. 54-2 at 3-4; Dkt. No. 54-5 at 15:10-22.)[3] Plaintiff concedes he was aware of the grievance procedure at Great Meadow. (Dkt. No. 54-2 at 3; Dkt. No. 54-5 at 14:7-15.) Following the incidents on January 19, 2011, Plaintiff sent a letter dated January 30, 2011, to Superintendent N. Bezio describing the altercation and alleging that "[t]he officers instead of breaking up the fight assaulted [Plaintiff], by clubbing, punching and kicking [him] into unconsciousness . . . . [T]he officers threatened to kill [him] if [he] reported the incident." (Dkt. No. 54-2 at 35.) Plaintiff further wrote that he feared for his life and did not feel safe in the facility. *Id.*

Thereafter, Plaintiff filed a grievance against the correctional officers for kicking him in his face, nose, and back. (Dkt. No. 54-2 at 22-24.) An investigation took place, which included "an interview with the grievant, staff members named in the complaint, and a review of documents available from the incident described by the grievant." (Dkt. 54-2 at 40.) The grievance was treated as a harrassment complaint and forwarded directly to the superintendent.

---

[2] In his complaint, Plaintiff alleges the x-rays took place on January 25, 2011, after he complained of continued pain from the incident. (Dkt. No. 1 ¶ 18.) However, the Ambulatory Health Record and Final Report of the x-ray note the date of the exam as January 19, 2011. (Dkt. No. 54-1 at 5-8.)

[3] Citations to page numbers in Plaintiff's deposition refer to the page numbers assigned by the Court's electronic filing system.

*Id.* at 29. On March 18, 2011, Plaintiff's grievance was denied because there was "absolutely no evidence to support the allegations in this case." *Id.* at 25. Plaintiff appealed the decision based on the officers' statements "admit[ting] . . . they use[d] force [i]n the incident against [Plaintiff]." *Id.* at 31. On June 15, 2011, the Central Office Review Committee ("CORC") denied Plaintiff's appeal. *Id.* at 21.

Plaintiff filed this action against Defendants Gordon, Burch, Huse, Hood, John Doe #1, and Lipka on January 9, 2013. (Dkt. No. 1.) Defendant Lipka now moves for summary judgment. (Dkt. No. 54.) Plaintiff opposes the motion. (Dkt. No. 62; Dkt. No. 67.)

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4

(1986). In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

III.    **ANALYSIS**

Plaintiff alleges that Defendant Lipka violated his Eighth Amendment right to adequate medical care by not treating his injuries. (Dkt. No. 1 ¶¶ 14-16, 23.) Defendant Lipka moved for summary judgment on (1) failure to exhaust administrative remedies, (2) failure to establish deliberate indifference, and (3) qualified immunity. (Dkt. No. 54-4.) The Court will only address the first issue, as it is dispositive. Defendant Lipka argues that the claims against her must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing his complaint. (Dkt. No. 54-4 at 1-5.)[5] Defendant is correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative

---

[4]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

[5]    Citations to page numbers in Defendant's memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93. Here, it is undisputed that Plaintiff failed to file a grievance against Defendant Lipka. (Dkt. No. 54-2 at 3-4; Dkt. No. 54-5 at 54:10-22.) Therefore, Plaintiff did not exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[6]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available:

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

---

[6] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

7

Here, first, the administrative remedies not pursued by Plaintiff were available to him. Plaintiff filed a grievance against the correctional officer Defendants on February 16, 2011. (Dkt. No. 54-2 at 22-23, 40.) At his deposition, Plaintiff testified that he "knew about doing grievance," although he could not specifically recall whether he made allegations against Nurse Lipka in his grievance. (Dkt. No. 54-5 at 14:15.) At no point in the record does Plaintiff mention Defendant Lipka in a grievance or appeal of a grievance decision. (Dkt. No. 54-2 at 22-24, 31.)

Second, Defendant Lipka preserved the exhaustion defense by pleading it in her answer. (Dkt. No. 34 ¶ 14; *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).) There is no evidence in the record that Defendant's behavior estops her from asserting the exhaustion defense. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-164 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Further, as stated above, Plaintiff was not prevented from exhausting his available administrative remedies by the other Defendants since he filed grievances against them. (Dkt. No. 54-2 at 22-23, 40.)

Third, although Plaintiff alleges "special circumstances," they do not plausibly justify his failure to comply with the PLRA with regards to Defendant Lipka. Plaintiff argues in his opposition that he had feelings of "imminent danger" and so feared seeking administrative remedies. (Dkt. No. 62 at 2.) Plaintiff wrote one letter to Superintendent N. Bezio on January 30, 2011, after the incident, claiming that "the officers threatened to kill [him] if [he] reported the incident." (Dkt. No. 54-2 at 35.) However, Plaintiff then filed a grievance against the

correctional officers, suggesting that he no longer feared "imminent danger." *See Belile v. Griffin*, No. 9:11-CV-0092, 2013 U.S. Dist. LEXIS 47137, at *21, 2013 WL 1776086, at *6 (N.D.N.Y Feb. 12, 2013) (holding that the plaintiff failed to exhaust his administrative remedies against one defendant because the plaintiff had never mentioned the defendant's behavior or made a complaint against the defendant in the two grievances he filed against the remaining defendants.)[7] Plaintiff does not allege any other "special circumstances" in his responses. (Dkt. No. 62; Dkt. No. 67.) Therefore, Plaintiff was not justified in his failure to exhaust administrative remedies because of "special circumstances."

It is undisputed that Plaintiff did not file a grievance against Defendant Lipka according to the PLRA. (Dkt. No. 54-2 at 3-4; Dkt. No. 54-5 at 15:14-16.) Further, as discussed above, the administrative remedies were available to Plaintiff, Defendants neither forfeited the exhaustion defense nor were estopped from asserting it, and "special circumstances" were not plausibly alleged. Therefore, I recommend that the Court find that Plaintiff's failure to exhaust is not excused and dismiss this action against Defendant Lipka without prejudice.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 54) be **<u>GRANTED</u>**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Belile v. Griffin*, No. 9:11-CV-0092, 2013 U.S. Dist. LEXIS 47137, 2013 WL 1776086 (N.D.N.Y Feb. 12, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

---

[7] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

9

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: October 6, 2014  
      Syracuse, New York

Thérèse Wiley Dancks  
United States Magistrate Judge

2013 WL 1776086
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Joseph J. BELILE, Plaintiff,

v.

C.O. GRIFFIN, et al., Defendants.

Civ. Action No. 9:11–CV–0092
(TJM/DEP).    |    Feb. 12, 2013.

**Attorneys and Law Firms**

Joseph J. Belile, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, James Seaman, Esq., Assistant Attorney General, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Joseph J. Belile, a New York State prison inmate, has commenced this action against several corrections employees stationed at the facility in which he was housed at the relevant times, including its superintendent, pursuant to 42 U.S.C. § 1983, complaining of multiple violations of his civil rights. In his amended complaint, plaintiff alleges that, as a result of being denied his request for placement into protective custody, he was attacked by a fellow inmate. Belile also alleges that some of the named-defendants encouraged other inmates to attack him, and that he was assaulted by other named-defendants on two separate occasions.

Currently pending before the court in connection with this action is a motion by the defendants for the entry of summary judgment dismissing plaintiff's amended complaint. Defendants base their motion on (1) plaintiff's alleged failure to exhaust his administrative remedies before commencing suit, (2) their contention that plaintiff's claims fail on the merits, and (3) in the alternative, their claim of entitlement to qualified immunity. For the reasons set forth below, I recommend that plaintiff's amended complaint be dismissed for failure to exhaust available administrative remedies.

**I.** *BACKGROUND* [1]

Plaintiff Joseph Belile is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Am. Compl. (Dkt. No. 37) at 1. Although now confined elsewhere, at the times relevant to this action, plaintiff was held in keeplock confinement at the Great Meadow Correctional Facility ("Great Meadow"), a maximum security prison located in Comstock, New York.[2] Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 1. Upon his arrival at Great Meadow, plaintiff was assigned to a cell located on the fourth tier of the B-block, a housing unit comprised of four floors of cells, all of which are oriented in the same direction and face an open area. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18.

On or about April 23 or 24, 2009, while in his cell on B-block, Belile overheard two inmates yelling that he would be killed if he came out of his cell. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 19–20. Although plaintiff was not able to identify any of the inmates involved because of the orientation of the cells in B-block, he believes that the threats came from one floor below his cell. *Id.* at 19, 85–86. The next day, plaintiff wrote letters to defendant Charles F. Kelly, Jr., the Deputy Superintendent of Security at Great Meadow, and the B-block sergeant, requesting that he be placed in protective custody ("PC"). *Id.* at 16, 19; Am. Compl. (Dkt. No. 37) at 9; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 8; Kelly Decl. Exh. A (Dkt. No. 55, Attach.10). That same day, defendant Kelly assigned defendant Donald Maguire, a corrections sergeant at the facility, to investigate the matter. Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 9.

**\*2** After receiving the assignment to review plaintiff's PC request and obtaining relevant background information, defendant Maguire interviewed Belile on the evening of April 27, 2009. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶¶ 5, 8. During that interview, plaintiff was unable to provide specific information to support his belief that he was in danger, or to identify any inmate at Great Meadow that might want to harm him.[3] *Id.* at ¶¶ 9–10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 23–25. Finding no basis to conclude that plaintiff faced a credible threat to his safety, defendant Maguire denied plaintiff's request for PC, had him returned to his keeplock cell, and prepared a report to defendant Kelly concerning the results of his investigation. Maguire Decl. (Dkt. No. 55, Attach.12) at 2; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 10;

Kelly Decl. Exh. B (Dkt. No. 55, Attach.11); Plaintiff's Dep. Tr. (Dkt. No. 55, Attach.2) at 26, 29.

Upon completion of the interview by defendant Maguire, plaintiff was escorted back to his B-block cell by a corrections officer identified by him as defendant Griffin, a corrections officer at Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 29. When plaintiff arrived at the foot of the stairs leading to his fourth-floor cell, he dropped the bags that he was carrying "to catch [his] breath." Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 31. At that moment, defendant Griffin asked plaintiff what he was convicted of that resulted in his incarceration, and, when plaintiff answered him, defendant Griffin kicked plaintiff in the left thigh area and told him to move up the stairs. *Id.* at 31.Plaintiff felt what he describes as a sharp pain for a few moments after being kicked by the corrections officer, but the pain subsided by later that night, and he never sought medical treatment for the injury. *Id.* at 33.

On or about April 27, 2009, the day after plaintiff's interview with defendant Maguire, defendant Murphy, a corrections officer assigned to supervise B-block inmates' transit to the Great Meadow mess hall for breakfast, stated to his accompanying officer, defendant John Doe # 1, when reaching plaintiff's cell for escort, "Belile B–4–29 is a rapo and he tried to sign into PC last night."Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 33–34; Am. Compl. (Dkt. No. 37) at 10.Plaintiff claims that, while defendant Murphy pretended to direct that statement to defendant John Doe # 1 standing next to him, he actually said it loud enough so that other inmates could hear him as well. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 34–35. Later on April 28, 2009, after the evening meal, an unknown inmate screamed out "29 Cell tried to sign into PC. He's a rat. We'll get him when he comes out."*Id.* at 21–22.

On May 1, 2009, while plaintiff was watching television, another inmate splashed a hot liquid into his cell, causing him to suffer burns that required medical treatment. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 44–47. After receiving treatment for his injuries, plaintiff was escorted to PC, which is located on the D-block of Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 53–55.

*3 Following his arrival in PC, plaintiff received four bags of personal property from defendants Dimick and Brockley, two other corrections officers at the facility, both of whom were known to plaintiff from an earlier period in 2006 when plaintiff was confined in a Behavioral Health Unit program at Great Meadow. Am. Compl. (Dkt. No. 37) at 10–11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 56–59. After delivering plaintiff's property, defendants Dimick and Brockley kicked plaintiff in the genitals and punched him in the head. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 61. The officers then threw the four property bags at plaintiff and left his cell. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62. Plaintiff did not seek medical treatment for the injuries resulting from the actions of defendants Dimick and Brockley. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62.

Within a couple of days of arriving in PC, plaintiff wrote a grievance and placed it in the meal slot of his cell gate to be picked up by a corrections officer. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64, 66. The grievance was, in fact, picked up, but plaintiff does not know precisely who retrieved it. *Id.* at 66, 67.On or about May 20, 2009, after plaintiff did not receive a response to his first grievance, he wrote a second grievance, which again was picked up from his meal slot by an unknown individual. *Id.* at 66, 67.Plaintiff did not receive a response to the second grievance. *Id.* at 66.Other mail that plaintiff placed in his meal slot to be sent out while he was in PC did reach its destination. *Id.* at 69–70.There is no DOCCS record of plaintiff filing these two grievances, nor is there a record that plaintiff appealed any grievance relating to the matters now in issue to the relevant appellate entity within DOCCS. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8; Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 26, 2011. Complaint (Dkt. No. 1). Following a period of pretrial discovery, during which plaintiff attempted to identify the defendants previously sued only as "Doe" defendants, he filed an amended complaint on November 8, 2011. Am. Compl. (Dkt. No. 37). Plaintiff's amended complaint names, as defendants, Great Meadow Superintendent Bezio;[4] Great Meadow Deputy Superintendent of Security Kelly; Corrections Sergeant Maguire; and Corrections Officers Griffin, Murphy, Dimick, Brockley, and defendant "John Doe # 1." *Id.* at 2–3.Construed with the utmost liberality, plaintiff's amended complaint asserts a due process claim under the Fourteenth Amendment, and excessive force, failure to protect, and deliberate indifference claims under the Eighth Amendment, all pursuant to 42 U .S.C. § 1983. *Id.* at 12–13.

On May 31, 2012, following the completion of discovery, defendants filed a motion for summary judgment seeking dismissal of plaintiff's amended complaint based on several grounds, generally arguing that plaintiff failed to exhaust his administrative remedies, that plaintiff's amended complaint fails on the merits, and, alternatively, that all defendants are entitled to qualified immunity. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–17. On June 7, 2012, plaintiff filed his opposition to that motion, Plf.'s Resp. (Dkt. No. 56), and defendants subsequently filed their reply on June 14, 2012, Defs.' Reply (Dkt. No. 58).

**\*4** Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local 72.3(c).*See*Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

**A.** *Summary Judgment Standard*
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248;*see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party.*Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.** *Failure to Exhaust*
Defendants argue that plaintiff is precluded from pursuing his claims in this action as a result of his failure to exhaust available administrative remedies before filing suit. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–5. In support, defendants offer declarations from Jeffrey Hale, Assistant Director of the DOCCS Inmate Grievance Program ("IGP"), and Jason Hoagland, Acting IGP Supervisor at Great Meadow. Dkt. No. 55, Attachs. 14, 15. Hale avers that, based upon a search of available DOCCS records, plaintiff did not, in accordance with the available grievance procedures in place at Great Meadow while plaintiff confined there, pursue an appeal to the DOCCS Central Office Review Committee ("CORC") related to the denial of plaintiff's request to be placed in PC. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. Similarly, Hoagland avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. In response, plaintiff argues that "there is not any available administrative remedie[s] when an assault and harm have already occurred," and that the exhaustion requirement only applies to " 'prison conditions' under the P.L.R.A.," which plaintiff is not challenging. Plf. Resp. (Dkt. No. 57) at ¶ 2.

**1.** *Legal Principles Governing Exhaustion*
**\*5** The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is ... mandatory. Prisoners

must now exhaust all 'available' remedies[.]" (internal citations omitted)); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [5] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). [6]

In the event the defendant establishes that the inmate-plaintiff failed "to fully complete[ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [7] *Woodford,* 548 U.S. at 95; *see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).

In accordance with the PLRA, the DOCCS has made the IGP available to inmates, which is comprised of a three-step procedure that inmates must use when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). The IGP procedure is accurately described in Hale's declaration, Dkt. No. 55, Attach. 14, and embodied in 7 N.Y.C.R.R. § 701. Under the IGP, an inmate must first file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's inmate grievance resolution committee ("IGRC") has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision.*Id.* at § 701.5(c). The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal. [8] *Id.* at § 701.5(c)(i), (ii).

***6** The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision. *Id.* at § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP process, a decision must be entered within a specified time period. Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can —and must—be appealed to the next level, including CORC, to complete the grievance process."*Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J. adopting report and recommendation by Lowe, M.J.) (citing, inter alia,7 N.Y.C.R .R. § 701.6(g)(2)).

Generally speaking, if a plaintiff fails to follow each of the required three steps of the above-described procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. County of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

**2.** *Application of Legal Principles*
Initially, the court notes that plaintiff alleges that he only filed two grievances on or about May 2, 2009, and May 20, 2009, both of which, when liberally construed, complain that, as a result of denials by defendants Maguire and Kelly of his request to be placed in PC, he was assaulted by another inmate. Am. Compl. (Dkt. No. 37) at 5–6.The grievances also complain that defendants Murphy and Doe improperly disclosed to other inmates that plaintiff was convicted of rape in the third degree, and allege that defendants Dimick and Brockley assaulted plaintiff immediately after arriving in PC. *Id.*Because these two grievances do not include any complaints about defendant Griffin's assault on plaintiff when he escorted plaintiff back from defendant Maguire's office, and because there is no record evidence that plaintiff ever filed a grievance as it relates to this allegation, I find that plaintiff failed to exhaust his available administrative remedies regarding any excessive force claim against defendant Griffin, in violation of the Eighth Amendment. However, because each of the other named-defendants are implicated in plaintiff's grievances,

the court proceeds to discuss whether plaintiff exhausted available administrative remedies as it relates to the claims asserted against the remaining named-defendants.

After carefully reviewing the record evidence, I find that there is a dispute of fact as to whether plaintiff actually filed a grievance with the IGP clerk that relates to any of the allegations giving rise to this action.[9] Specifically, plaintiff's amended complaint alleges that, while he filed two grievances, both were intercepted by correctional officers at Great Meadow. Am. Compl. (Dkt. No. 37) at 3. Similarly, at his deposition, plaintiff testified that he placed two written grievances in his meal slot to be filed by corrections officers. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 66–67. According to plaintiff, after a corrections officer retrieves a grievance from an inmate, the grievance is supposed to be forwarded to the appropriate officials. Am. Compl. (Dkt. No. 37) at 3. However, Hoagland, the Acting IGP Supervisor at Great Meadow, avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. Moreover, Hale, the DOCCS IGP Assistant Director, states that a search of the relevant DOCCS records shows that plaintiff did not file an appeal to CORC arising from any incident while at Great Meadow. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. These conflicting pieces of evidence demonstrate that there is a dispute of fact as to whether plaintiff initiated the IGP process at Great Meadow by filing a grievance relating to the allegations giving rise to this action.

**\*7** Whether or not plaintiff did attempt to lodge grievances in accordance with the IGP, however, is immaterial because there is no dispute that he failed to "properly exhaust" his administrative remedies by complying with the IGP's requirement that he appeal any denial to the superintendent of the facility, and then appeal any unfavorable decision from the superintendent to CORC. *Woodford,* 548 U.S. at 95; *Ruggerio,* 467 F.3d at 176. Plaintiff does not argue, nor does he offer any proof in his amended complaint, at his deposition, or in opposition to defendants' motion for summary judgment, that he pursued his grievances to completion. For this reason, I find that no reasonable factfinder could conclude that plaintiff exhausted available administrative remedies as it relates to any of the allegations giving rise to this action. *See Goodson v. Silver,* No. 09–CV–0494, 2012 WL 4449937, at \*4 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.) ("[I]f a prisoner has failed to follow each of the required ... steps for the ... grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies.").

Despite finding that plaintiff did not file and pursue to completion a grievance regarding the claims he now raises in this action, the exhaustion inquiry is not ended. In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[10] *Macias,* 495 F.3d at 41; *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the Second Circuit's test, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such remedies were available to the plaintiff, the court must next examine "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust defense." *Hemphill,* 380 F.3d at 686,*accord, Macias,* 495 F.3d at 41. Finally, in the event the proffered defense survives these first two levels of scrutiny, the court must examine whether special circumstances "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[11] *Id.*

**a.** *Availability of Remedy*
As was discussed above, in New York, the DOCCS has implemented the three-step IGP in accordance with the requirements under the PLRA. 7 N.Y.C.R.R. § 701.5. Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances in which the grievance procedure nonetheless is deemed unavailable to an inmateplaintiff.*Hemphill,* 380 F.3d at 686. For example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, or where defendants' behavior prevents plaintiff from seeking administrative remedies."*Hargrove,* 2007 WL 389003, at \*8 (internal citation omitted); *see also Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (holding that, where a prisoner's favorable decision is not properly implemented, and the time to appeal the decision has expired, the prisoner's available administrative remedies had been exhausted).

**\*8** Here, plaintiff does not argue that he was "unaware of the grievance procedures or did not understand it."*Hargrove,* 2007 WL 389003, at \*8. *See* Plf.'s Dep. Tr. (Dkt. No.

55, Attach.2) at 72 ("Q: So you're familiar with the Inmate Grievance Program; right? A: Yes."). Rather, he alleges that the grievance procedure was unavailable to him because corrections officers intercepted and discarded the two grievances that he left in his meal slot shortly after arriving in PC. Am. Compl. (Dkt. No. 37) at 3–4; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64–68. Plaintiff admitted at his deposition, however, that he is only speculating when he alleges that the officers who picked up his mail discarded those grievances. *Id.* at 70–71.Similarly, plaintiff admitted that he does not know who retrieved his grievances, which means he does not know whether any of the named-defendants were responsible for, or aware of, the alleged interception of his grievances. *Id.* at 68.Plaintiff also acknowledged that other mail that he sent from PC did reach the intended addressees. *Id.* at 69–70.

Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the IGP. *See Butler v. Martin,* No. 07–CV–0521, 2010 WL 980421, at *5 (N.D.N.Y. Mar. 15, 2010) (Scullin, J.) (finding that the plaintiff was not excused from failing to avail himself of the administrative procedures where he alleged that his grievances were discarded but did not offer any evidence "that a particular officer discarded the[m]"); *Winston v. Woodward,* No. 05–CV–3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) ("In light of Plaintiff's failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered ... mail tampering, ... the Court finds, even taking the evidence in the light most favorable to Plaintiff, that he has not put forth sufficient evidence to sustain his burden [.]"); *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.2004) ("Even assuming [the plaintiff] did submit grievances, he offers no evidence that any particular officer thwarted his attempts to file[.]"); *Nunez v. Goord,* 172 F.Supp.2d 417, 429 (S.D.N.Y.2001) (finding the plaintiff's allegation that his failure to file grievances was due to " 'the practice of certain officers' " to destroy them "stand[s] alone and unsupported").

In any event, there is no dispute that, even assuming that any of the defendants did, in fact, intercept and discard plaintiff's grievances, there were other avenues available to plaintiff for pursuing his grievances. For example, in his declaration, Hoagland notes that, at least weekly, either the IGP supervisor or the sergeant assigned to the grievance office at Great Meadow makes rounds through the entire facility, including in D-block, where PC inmates are confined, to address grievance-related questions or issues. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 5. During those rounds inmates may hand grievances directly to the person making the rounds. [12] *Id.* at ¶ 6. Accordingly, even assuming that plaintiff's grievances were intercepted, there was an available, alternative avenue for submitting those grievances directly to the IGP supervisor.

*\*9* Finally, under the IGP, even if plaintiff's grievances were intercepted and not filed with the IGP clerk, "he had the ability—and the duty to—file an appeal regarding the non-processing of th[ose] grievance[s]."*Sidney,* 2012 WL 1380392, at *5 (collecting cases and finding that the plaintiff failed to exhaust available administrative remedies where he argued that a second grievance was " 'pilfered by theivery hands' "); *Butler,* 2010 WL 980421, at *6 ("Plaintiff was obligated to appeal to the next administrative level once it became clear to him that a response to his grievances was not forthcoming."(citing, *inter alia,*7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."))); *Veloz,* 339 F.Supp.2d at 516 ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

For all of these reasons, I conclude that the grievance process was available to plaintiff.

**b.** *Estoppel*
The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."*Hemphill,* 380 F.3d at 686 (internal citations omitted). Exhaustion of remedies is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block,* 549 U.S. 199, 216 (2007). Here, defendants have properly preserved the exhaustion defense by asserting it as an affirmative defense in their answers. Answer (Dkt. No. 39) at ¶ 15; Answer (Dkt. No.

45) at ¶ 15. Turning to estoppel, I find no basis in the record to support a finding that defendants should be precluded from relying upon the defense. "Estoppel will be found where an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston,* 2008 WL 2263191, at *9 (internal quotation marks omitted) (collecting cases). "[A] plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures." *Id.* (citing, inter alia, *Hemphill,* 380 F.3d at 688–89).

As was discussed above, although plaintiff argues that the two grievances he left in his meal slot were discarded by corrections officers, for all of the same reasons that this argument fails when analyzing whether administrative remedies were "available" to plaintiff, it similarly falls short in establishing that defendants should be estopped from asserting the exhaustion defense. *See Giano,* 380 F.3d at 677 n. 6 ("We note that the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, [and] (b) situations in which administrative remedies are not 'available' to the plaintiff[.]"); *see also Hargrove,* 2007 WL 389003, at *8 n. 14. The court would only add that, because plaintiff does not allege, or provide any evidence that, a named-defendant acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense, he has failed to establish a dispute of material fact as to whether any of defendants are estopped from asserting the exhaustion defense. *See Atkins v. Menard,* No. 11–CV–9366, 2012 WL 4026840, at *3 (N .D.N.Y. Sept. 12, 2012) (Suddaby, J.) ("Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.").

c. *Special Circumstances*

*10 The third, catchall factor to be considered under the Second Circuit's exhaustion test focuses upon whether special circumstances exist to justify excusing a plaintiff's failure to exhaust available administrative remedies, notwithstanding the fact that the administrative remedies were available, and the defendants are not estopped from asserting the defense. *Hemphill,* 380 F.3d at 689; *Giano,* 380 F.3d at 676–77.

Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials, and leads the plaintiff to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77, *accord, Hargrove,* 2007 WL 389003, at *10.

Here, there is no allegation that special circumstances exist to excuse plaintiff's failure to exhaust available administrative remedies, nor does plaintiff offer any evidence of potentially applicable special circumstances. As a result, I find that plaintiff is not excused from his failure to exhaust administrative remedies before commencing this action, and I recommend that his amended complaint be dismissed on this procedural basis alone.[13]

IV. *SUMMARY AND RECOMMENDATION*
It is undisputed that, prior to commencing this action, plaintiff failed to exhaust his administrative remedies by pursuing to completion any grievance related to the events giving rise to this action. In light of this failure, and finding no basis to conclude that plaintiff's compliance with the IGP should be excused, I recommend dismissal of plaintiff's amended complaint in its entirety on this basis alone, without addressing either the merits of his claims, or the qualified immunity argument advanced by defendants in support of their motion for summary judgment. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 55) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Footnotes

1   Although plaintiff opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1 statement of material facts that complies with Local Rule 7.1(a) (3). Specifically, defendants filed an eleven-page statement of material facts that contains eighty-two paragraphs and complies with the citation requirements of Local Rule 7.1(a)(3). Defs.' L.R. 7.1 Statement (Dkt. No. 55, Attach.18). In response, plaintiff filed a two-page statement of material facts that contains only five paragraphs, neither admits nor denies any of the paragraphs contained in defendants' statement of material facts, and fails to cite to any record evidence. Dkt. No. 57 at 6–7.Plaintiff was warned of the consequences of failing to properly respond to defendants' statement of material facts. Dkt. No. 56, Attach. 1. The court therefore accepts defendants' facts to the extent that they are supported by accurate citations to the record. *See* N.D .N.Y. L.R. 7.1(a)(3) (*"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."*(emphasis in original)); *see also, e.g., Elgamil v. Syracuse Univ.,* No. 99–CV–0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases and deeming all of the facts asserted in the defendant's statement of material facts as admitted where the plaintiff did not specifically admit or deny any of the assertions and "failed to contain a single citation to the record").

2   "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates."*Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989), *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., adopting report and recommendation by Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995))."The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends."*Lee v. Coughlin,* 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). Although, as a keeplocked inmate, plaintiff was entitled to leave his cell for one hour each day for the purpose of exercise, *Lee,* F.Supp.2d at 628, he did not avail himself of that opportunity. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 51–52.

3   Although Belile named two inmates, defendant Maguire determined that neither was presently confined at Great Meadow. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶ 9.

4   While Norman Bezio is named by Belile as a defendant, and is identified as the superintendent at the facility in issue, during his deposition, Belile acknowledged that Bezio was not in fact the superintendent at any time relevant to the events giving rise to this action. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 90.

5   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

6   In this case, the Supreme Court's decision in *Porter* effectively forecloses plaintiff's argument that claims of the past-use of excessive force are not subject to the exhaustion requirement. *Porter,* 534 U.S. at 532.

7   While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " in order to satisfy the PLRA, an inmate-plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies by complying with the grievance procedures in place at the relevant correctional facility. *Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted)).

8   Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision. *Id.* at § 701.5(c) (i), (ii).

9   As will be discussed more completely below, however, because Belile failed to pursue the alleged grievance to completion, this fact is not material in that it does not preclude the entry of summary judgment against him on this issue.

10  Whether the Second Circuit's test in *Hemphill* survives following the Supreme Court's decision in *Woodford* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* No. 04–CV–0395, 2007 WL 2847304, at *2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, J., adopting report and recommendation by Homer, M.J.).

11  Though distinct in theory, in practice, the application of the three prongs of the prescribed test admit of overlap. *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004); *see also Hargrove v.. Riley,* No. CV–04–4587, 2007 WL 389003, at *8 n. 14 (E.D.N.Y. Jan. 31, 2007) ("Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies 'unavailable' to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.").

12  Again, because plaintiff has not disputed defendants' Local Rule 7.1 statement of material facts, which is, in part, supported by Hoagland's declaration, the court assumes the truth of the statements made in Hoagland's declaration.

13  In recommending dismissal of plaintiff's amended complaint in its entirety, I include the defendant identified as "John Doe # 1" who has neither been identified nor appeared in the action. Because that defendant is not specifically alleged to have been, nor is there record evidence to establish that he was, involved in the interception and discarding of plaintiff's grievances, I find he would not

be estopped from asserting the exhaustion defense and thus, like the named-defendants, would be entitled to dismissal on the basis of plaintiff's failure to exhaust. Alternatively, I recommend dismissal of all claims against defendant Doe, *sua sponte,* based upon plaintiff's failure to properly identify and serve him, as required under both Federal Rules of Civil Procedure and this court's local rules, despite the fact that this case has been pending for more than two years, and based on plaintiff's failure, prior to the close of discovery, to ascertain the identity of that individual. Fed.R.Civ.P. 41(b),(m); *see also Butler,* 2010 WL 980421, at *6–7.

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.