**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**EDWIN CRUZ,**

        **Plaintiff,**

 **vs.**             **9:13-CV-00029
                 (MAD/TWD)**

**A. GORDON, et al.,**

        **Defendants.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**EDWIN CRUZ**
04-A-0512
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**    **GREGORY J. RODRIGUEZ, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

 *Pro se* plaintiff, Edwin Cruz, is an inmate currently in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff commenced this prisoner civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by acting with excessive force and deliberate indifference to his medical needs. *See* Dkt. No. 1. In an October 6, 2014 Report-Recommendation and Order, Magistrate Judge Thérèse Wiley Dancks recommended that the Court grant Defendant Kimberly Lipka's motion for summary judgment. *See* Dkt. No. 73. On October 17, 2014, Plaintiff objected

to Magistrate Judge Dancks' Report-Recommendation and Order. *See* Dkt. No. 76. Currently before the Court is Defendant Lipka's motion for summary judgment.

## II. BACKGROUND

### A. Plaintiff's Allegations

On January 19, 2011, while imprisoned at Great Meadow Correctional Facility, Plaintiff and another inmate had a "heated verbal exchange," which quickly escalated into a physical fight. Dkt. No. 1 at ¶¶ 4,9. Defendant correctional officers A. Gordon, J. Burch, D. Huse, D. Hood, and John Doe #1 responded to the altercation. *Id.* at ¶ 10. Plaintiff alleges that, upon arrival, Defendants immediately began assaulting the combatants "with kicks, punches, and batons." *Id.* Defendants then handcuffed both inmates around their wrists and ankles, and proceeded to beat them all the way to the facility hospital; once at the facility hospital, Defendants allegedly continued their assault on Plaintiff. *Id.* at ¶¶ 11-12.

After the incident occurred, Defendant Nurse Kimberly Lipka conducted a brief medical examination of Plaintiff. *See* Dkt. No. 54-1. Defendant Lipka noted slight swelling and bruising on Plaintiff's upper right forehead and left ear, cleaned Plaintiff's bloody nostrils, and then referred Plaintiff to a Physician Assistant ("P.A.") for further assessment of his injuries. *Id.* at ¶ 8. Defendant Lipka contends that, consistent with protocol, she did not provide Plaintiff with any pain medication pending P.A. Nesmith's evaluation in order to avoid any complications that may arise from giving such medication (*i.e.* need of surgery, internal bleeding). *See* Dkt. No. 54-1 at ¶ 5. Plaintiff alleges, however, that his repeated complaints of head pain should have been addressed, and that some of his injuries were not documented or treated. *See* Dkt. No. 54-5 at 35; Dkt. No. 1 at ¶ 13. Plaintiff claims that Defendant Lipka did not document the cuts on his wrists and ankles due to the handcuffs, his swollen nose, or the bruises on his back and legs "due to

2

batons." *Id.* at ¶ 14. P.A. Nesmith ordered x-rays for Plaintiff's spine and facial structure; the x-ray results were negative for fractures, but Plaintiff claims he suffers hearing loss from the incident. Dkt. No. 54-1 at ¶ 10; Dkt. No. 1 at ¶¶ 18-19. After Plaintiff was referred to P.A. Nesmith, Defendant Lipka did not render any further medical care to Plaintiff. Dkt. No. 54-1 at ¶ 19.

In a letter dated January 30, 2011, Plaintiff described what happened and expressed his fears of reporting the incident: "[t]he officers . . . assaulted [Plaintiff], by clubbing, punching and kicking [him] into unconsciousness. . . [T]he officers threatened to kill [him] if [he] reported the incident." *See* Dkt. No. 54-2 at 35. Plaintiff also stated that he felt unsafe at the facility, and that he feared for his life. *Id.* Despite his apprehensions, on February 10, 2011, Plaintiff filed a grievance against the correctional officers for the use of force incident that occurred on January 19, 2011. *See* Dkt. No. 54-2 at 22-24. Plaintiff's grievance was assigned grievance number GM 51,347-11. Dkt. No 54-2 at ¶ 10. On March 18, 2011, Plaintiff's grievance was denied because there was "absolutely no evidence to support the allegations in this case." *See* Dkt. No. 54-2 at 25. Plaintiff appealed the decision because the officers "admit[ted] . . . [t]hey use[d] force [i]n the incident against [Plaintiff]." *Id*. at 31. On June 15, 2011, the Central Office Review Committee ("CORC") denied Plaintiff's appeal. *Id*. at 21. Plaintiff never filed a formal grievance against Defendant Lipka. Dkt. No. 54-2 at ¶ 11-12.

Plaintiff filed his complaint on January 9, 2013, naming A. Gordon, J. Burch, D. Huse, Hood, John Doe #1, and Nurse Lipka as defendants. *See* Dkt. No. 1. Defendant Lipka currently moves for summary judgment. *See* Dkt. No. 54. Plaintiff opposes the motion. *See* Dkt. No. 62; Dkt. No. 67.

3

## B. Magistrate Judge Dancks' Report-Recommendation and Order

On October 6, 2014 Magistrate Judge Dancks issued a Report-Recommendation and Order in which she recommended granting Defendant Lipka's motion for summary judgment. *See* Dkt. No. 73. Defendant Lipka moved for summary judgement on (1) failure to exhaust administrative remedies, (2) failure to establish deliberate indifference, and (3) qualified immunity. *See* Dkt. No. 54-4. Only the first issue was addressed because it is dispositive. *See* Dkt. No. 73. Magistrate Judge Dancks agreed with Defendant Lipka that the claims against her must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") prior to commencing this action. *Id.*

## C. Plaintiff's Objections

On October 17, 2014, Plaintiff objected to the Report-Recommendation and Order, alleging that his grievances did, in fact, include statements about how "medical [did] not giv[e] [Plaintiff] any medication for the pain that he was in, arising from that incident." *See* Dkt. No. 76. Plaintiff argues that, at the time he filed his grievances, he did not know Defendant Lipka's name; he only knew the department she worked in, which was "medical." *Id.* Plaintiff contends that, for this reason, he has successfully exhausted his administrative remedies against Defendant Lipka consistent with the requirements of the PLRA. *Id.*

## III. DISCUSSION

## A. Standard of Review

When a party files specific objections to a magistrate judge's report-recommendation, the

district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden of showing that no genuine issue of material fact exists, through the production of admissible evidence, lies with the party moving for summary judgment. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Once the moving party has met its burden, the nonmoving party must produce evidence demonstrating that genuine issues of material fact remain in dispute. *Id.* at 273. A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, granting summary judgment is only justified when the court finds that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d

652 (1972)) (other citations omitted). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Exhaustion**

Defendant Lipka argues the claims against her must be dismissed because Plaintiff failed to exhaust all administrative remedies available to him as required by the PLRA. *See* Dkt. No. 54-4. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facilitiy until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is applicable in this case because it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to correctly exhaust administrative remedies under PLRA, the inmate must complete the administrative review process in accordance with the rules applicable to the particular institution in which he is confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

In general, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for filing grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the incident. *Id.* at § 701.5(a). Upon receipt of the grievance,

6

a representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days to informally resolve the issue. *Id.* at § 701.5(b)(1). If the matter is not resolved informally, then the full IGRC must conduct a hearing within sixteen calendar days of receipt of the grievance, *id.* at § 701.5(b)(2), and issue a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Next, the grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days. *Id.* at § 701.5(c)(1). The superintendent must issue a written decision within twenty calendar days for all grievances that do not involve a DOCCS-wide policy issue. *Id.* at § 701.5(c)(3)(ii). Finally, within seven working days of receipt of the superintendent's written decision, a grievant may appeal to CORC. *Id.* at 701.5(d)(1)(i). Upon receipt of the appeal, CORC has thirty calendar days to issue a written decision. *Id.* at 701.5(d)(3)(ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, then he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93. Plaintiff concedes that he filed no other grievances besides grievance number GM 51, 347-11: "That's all the grievance that I do about telling what happened with [the correctional officers], what they do to me. . ." Dkt. No. 54-5 at 52:16-21. Although Plaintiff argues that grievance number GM 51, 347-11 included an allegation that "medical" failed to provide him with medication for his pain, a review of GM 51, 347-11 reveals that he made no such statement. *See* Dkt. No. 76; Dkt. No. 54-2 at 22-24; Dkt. No. 54-2 at ¶¶ 11-12. Since Plaintiff never filed a grievance in which he mentioned Defendant Lipka, and made no reference to the medical department in the grievance he did file, Plaintiff has failed to exhaust his administrative remedies as to his claim against Defendant Lipka prior to commencing this action.

**C.** *Hemphill* **Inquiry**

7

Plaintiff's failure to exhaust his administrative remedies, however, does not conclude the review. The Second Circuit has held that a three-prong analysis is required where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* at 686. Second, if those remedies were available:

> the court should . . . inquire as to whether [some or all of ] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id*. Third, if the remedies were available and the defendant did not forfeit, and was not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements. *Id.*

First, the administrative remedies not pursued by Plaintiff were available to him. On February 16, 2011, Plaintiff filed grievances against the correctional officer Defendants. *See* Dkt. No. 54-2 at 22-24. On April 1, 2011, Plaintiff appealed because "the officers admit th[at] they use[d] force on the incident against [Plaintiff]." *Id.* at 31. At his deposition, Plaintiff conceded that he was aware of the grievance procedure prior to pursing the administrative remedies available to him, but he simply cannot recall whether he ever made allegations against Nurse Lipka. *See* Dkt. No. 54-5 at 53: 7-15; Dkt. No. 54-5 at 54:10-22. Plaintiff has not provided any documentation to support his conclusory statement that he filed a grievance against Nurse Lipka.

Second, Defendant Lipka preserved the exhaustion defense by pleading it in her answer. *See* Dkt. No. 34 at ¶ 14. Here, there is no evidence that Defendant Lipka's behavior estops her

8

from asserting the exhaustion defense. *See Ziemba v. Wezner*, 366 F.3d 161, 162-164 (2d Cir. 2004) (directing the district court to consider whether the defendants were estopped from raising the exhaustion defense where the plaintiff alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison in order to prevent him from seeking administrative remedies). Finally, as stated above, Plaintiff clearly was not prevented from exhausting his administrative remedies against the other Defendants as he did, in fact, file grievances against them. *See* Dkt. No. 54-2 at 22-24.

Finally, Plaintiff alleges no "special circumstances" that warrant excusing his failure to comply with the PLRA with regards to Defendant Lipka. First, Plaintiff argued in his opposition to Defendant Lipka's motion for summary judgment that he was dissuaded from filing a grievance against Defendant Lipka by his feelings of "imminent danger." *See* Dkt. No. 62 at 2. Again, this argument fails because Plaintiff's feelings of imminent danger were not significant enough to prevent him from filing his grievance against the correctional officer Defendants. *See* Dkt. No. 54-2 at 22-24. Next, Plaintiff argues that, because he did not have personal knowledge of Defendant Lipka's name, he mentioned the "medical department" in his filed grievance. *See* Dkt. No. 76. Regardless of whether or not Plaintiff had personal knowledge of Defendant Lipka's name, his argument fails because his filed grievance does not include any allegations against the medical department. *See* Dkt. No. 54-2 at 22-24.

Plaintiff did not exhaust his administrative remedies against Defendant Lipka in accordance with the PLRA. Further, as discussed above, the administrative remedies were available to Plaintiff, Defendant Lipka properly preserved the defense and is not estopped from asserting it, and no "special circumstances" excuse Plaintiff's failure to comply. Accordingly, the Court grants Defendant Lipka's motion for summary judgment granted.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Dancks' October 6, 2014 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons stated therein; and the Court further

**ORDERS** that Defendant Lipka's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendant Lipka is **DISMISSED** from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: February 6, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge